DBKCSALS

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,                    New York, N.Y.

4            v.                                 09 CR 443 (NRB)

5  ROBERT SALAMON,

6                 Defendant.

7  ------------------------------x

8
                                               November 20, 2013
9                                              4:55 p.m.

10
   Before:
11
                      HON. NAOMI REICE BUCHWALD,
12
                                               District Judge
13

14                          APPEARANCES

15  PREET BHARARA
        United States Attorney for the
16      Southern District of New York
    BY:  JANIS ECHENBERG
17       JAMES PASTORE

18      Assistant United States Attorney

19  PAUL SHECHTMAN
        Attorney  for Defendant
20

21

22

23

24

25

DBKCSALS

1          (Case called)

2          MS. ECHENBERG:  Janis Echenberg, for the government.

3     With me at counsel table is my colleague Jim Pastore and also

4     special homeland security investigator, Deidre Gordon.

5          MR. SHECHTMAN:  Your Honor, Paul Shechtman, for Mr.

6     Salamon.  With me at counsel table, I hope appropriately, is

7     Callie Feingold, who is a paralegal with my firm who has worked

8     very hard on this matter.

9          THE COURT:  Let's just begin by reviewing the

10    documents that I have received in connection with the

11    sentencing to be sure that I have them all.

12          First, I have the report of the probation department

13    dated November 13.  Then sequentially, I have the government's

14    5K letter dated November 6.  Then I have Mr. Shechtman's

15    submission letter of November 13.  Then there's a letter from

16    the government addressing the appropriate guidelines

17    calculation dated November 15.  Finally a letter from Mr.

18    Shechtman enclosing a pay stub from Mr. Salamon.  It was sent

19    in by fax.  It's dated November 18.

20          Is there anything else?

21          MR. SHECHTMAN:  Judge, I sent in also by fax this

22    morning just a letter to advise the Court that we had given the

23    amended tax returns to the government as required by the plea

24    agreement.  If the Court didn't get them, I apologize, but we

25    have done that.

1      MS. ECHENBERG:  We received a copy of the letter and

2  we received the amended tax filings.  We also have a consent

3  order for forfeiture that was signed, and we will hand that up

4  now.

5      THE COURT:  I've seen the consent preliminary order

6  for forfeiture.

7      Maybe we can just address and quickly put to one side

8  the guidelines calculation issue, which was the subject of the

9  November 15 letter.  I gather from that letter that the

10  government and Mr. Shechtman are in agreement that the

11  probation department got it wrong on the guidelines

12  calculation, and that the proper calculation yields a

13  guidelines range of 33 to 41 months.

14      MS. ECHENBERG:  That's correct, your Honor.

15      MR. SHECHTMAN:  Correct, your Honor.

16      THE COURT:  We will put that aside.

17      MS. ECHENBERG:  I have the relevant paragraph

18  citations if you want to go through that now or later.

19      THE COURT:  Sure.

20      MS. ECHENBERG:  I guess if we go in order, it would

21  start with paragraph 49.  The probation department says that

22  there shouldn't be grouping of the immigration offense and the

23  money laundering offense, but under note 3D1.2(c), we disagree

24  with that.  Because the money laundering was part of the

25  immigration fraud offense.

1    We laid out how we would calculate it.  I could walk

2 through that, but those counts should be grouped.

3    There is a note that specifically addresses that in

4 the guidelines.  That's application note six to section 2S1.1.

5 There would be a revision there that would group three with

6 group one.

7    Then the next change would be at paragraph 62.  We

8 would apply section 2S1.1(a)1 instead of (a)ii as the base

9 offense level.  That's because Mr. Salamon was not a

10 third-party money launderer.  The money laundering was part of

11 the immigration offense.  He committed the underlying offense

12 from which the laundered funds were derived, and the offense

13 level can be determined.  The offense level then would be the

14 base offense would then be at 20.  And that's the 11 base, plus

15 the nine enhancement for the number of documents under 2L2.1.

16 That's laid out in paragraphs 50 and 51.  We agree with

17 paragraph 63.  Then there is another two points added from the

18 immigration base offense level for the money laundering.

19    Then when you go to paragraph 65, the probation

20 department has imposed a role enhancement.  That is not

21 appropriate because Mr. Salamon was not a leader or organizer

22 of the money laundering, although he was certainly a leader and

23 organizer of the overall immigration fraud.  We weighed out in

24 our letter the Second Circuit case law that makes clear that

25 the leadership enhancement should not be applied there as it

1   was.

2          Then that changes the calculation in paragraphs 68

3   through 78; in particular, the combined adjusted offense level

4   at paragraph 74.  What ends up happening is you now have two

5   groups, group three and group one, which are referenced in

6   paragraph 68 and 69 are actually just one group.  You take the

7   highest offense level in that group, which is a 23 for the

8   immigration fraud.  Then you compare that to the adjusted

9   offense level for group two.

10          If I just misspoke, it's the immigration fraud for the

11  money laundering that are all one group.  Group three is the

12  money laundering.  Group one is the immigration fraud.  That's

13  how probation has done it.  We grouped that all together.  You

14  look at the relative offense levels.  The highest is a 23 for

15  the immigration fraud.  Then you compare that to group two,

16  which the bank fraud.  Because that's a significant number of

17  levels lower, you don't add any additional points.  Where you

18  come out is a combined offense level of 23.  Then you subtract

19  from that three points as they have done in paragraph 75 for

20  the acceptance of responsibility.  That's how you end up with a

21  level 20, which is 33 to 41 months.

22          THE COURT:  All I can say this is another good reason

23  to have the guidelines be advisory.

24          MS. ECHENBERG:  We thought it was important just to

25  have the calculation.

DBKCSALS

1          THE COURT:  I will probably just give the probation

2     department your letter.

3          MS. ECHENBERG:  We have copied them on the letter,

4     your Honor.  I think if you accept what we laid out in the

5     letter, the paragraphs that are implicated are the ones I

6     mentioned, plus paragraph 118 at the very end.  Then on page

7     28, the final recommendation by the probation department.

8          THE COURT:  Aside from the guidelines issue, are there

9     any other objections from either side to the probation report?

10         MS. ECHENBERG:  None from the government.

11         MR. SHECHTMAN:  Judge, these are in the small potato

12    category, but paragraph 104 references the lack of a recent pay

13    stub.  That's my mistake.  I thought I provided the August one.

14    I didn't realize a newer one was required.  We provided that.

15    Paragraph 116, I believe, says that the tax returns have not

16    been provided as required.  They have now been provided.  Those

17    are the only two from the defense.

18         THE COURT:  I assume you had a chance to review the

19    probation report with your client.

20         MR. SHECHTMAN:  We have, your Honor.

21         THE COURT:  There is a motion to be made first.

22         MS. ECHENBERG:  Yes, your Honor.  The government

23    moves, pursuant to section 5K of the Sentencing Guidelines, to

24    sentence the defendant in light of the factors set forth in the

25    guidelines for his substantial assistance in this case.

1          THE COURT:  Motion is granted.

2          MR. SHECHTMAN:  May I use the podium?

3          Judge, I will be brief.  I told Mr. Salamon that I

4    have no doubt that you read our submission and all of the

5    letters.

6          THE COURT:  He is correct about that.

7          MR. SHECHTMAN:  Judge, I met Sam Salamon shortly after

8    his arrest.  From the outset, he was always candid with me.  He

9    admitted his involvement in a long-running and massive

10   immigration fraud, and was prepared to accept responsibility

11   for it.

12         We discussed cooperation.  I had told him that he had

13   to be truthful.  He could not minimize his own role.  He could

14   not protect others.  He could not pull his punches.  He said he

15   could do all of that.  He then asked me the hardest question.

16   Would he have to testify against others some of whom were from

17   his community, some of whom were friends.  I told him that 95

18   percent of all criminal cases in this district and elsewhere

19   resolve themself in guilty pleas.  But I cannot give him any

20   assurances.  Part of the understanding would be that if anyone

21   went to trial he would have to testify, and testify truthfully.

22   He asked if he could have time to think about it.

23         In short order, Sam Salamon agreed to cooperate with

24   the government.  He did it for two reasons.  First, to make

25   amends.  He knew that he lived a crazy life replete with lies

1   and misrepresentations.  It was now over and I actually

2   believed he was relieved.  He also did it because of his

3   family.  What is best about Sam Salamon is his devotion to his

4   children, his three sons, and their abiding love for him.  He

5   wanted to do whatever he could so that he wouldn't be separated

6   from them.

7           Judge, Sam Salamon has been fully truthful with the

8   government.  He has testified truthfully in this courtroom in

9   an act that caused him great anguish at the time.  The case

10  your Honor presided over was one of the five percent.  Sam had

11  made a commitment to the government and to himself.  He kept

12  the commitment.

13          The consequences of honoring that commitment, as your

14  Honor, knows have been severe.  The orthodox Jewish Community

15  in Monsey, and in Williamsburg, and in Boro Park has much to be

16  commended.  They care for each other unlike almost any other

17  community.  But they live their lives too often as if this were

18  still the old country, as if our government, federal and state,

19  was the czar's government.  In some quarters, sadly, choosing

20  to cooperate with the government is a greater sin than

21  committing immigration fraud.  Your Honor, I know that what I

22  say to you is something you know, but I tell it because it's

23  essential to this case and to Sam Salamon's life.  Sam has been

24  ostracized from his community.  The rabbi of the synagogue

25  where he prayed for 20 years told him he was no longer welcome

1  there.  He went to a second synagogue to pray, only to have its

2  rabbi call him and tell him not to return.  He has been called

3  a snitch and a moser.  Friends, I should say former friends,

4  turned their back on him.  The saddest words Sam has ever said

5  to me are the words written in our sentencing submission, that

6  is painful as chemo therapy was, it pales in comparison to the

7  isolation that he now endures.

8         As you know, Sam was diagnosed in May 2010 with

9  chronic lymphocytic leukemia and underwent a six-month regime

10 of intensive chemotherapy.  The disease is dormant at the

11 present time.  The prognosis is uncertain.  I spoke to Dr.

12 Furman today, his oncologist.  I should say he is highly

13 respected oncologist, and the most difficult man in New York

14 City to get a letter from.

15        I will tell the Court what Dr. Furman said to me.  He

16 said the average life expectancy for the disease is ten years,

17 but the new drugs are in the late stages of clinical

18 experiments and could significantly extend that expectancy.

19 All of this, Sam lives with the uncertainty of his disease and

20 that uncertainty has taken its toll on him.

21        Judge, I said earlier that Sam's life resolves around

22 his three sons.  They all receive the education that he never

23 had.  They all earn a good living legitimately.  He is

24 immensely proud of them and for good reason.  They are in the

25 front row of the courtroom.

1    They are here today to show their support.  They pray

2  for your mercy for your leniency.  They ask you to allow Sam to

3  remain with them.  So do I.

4    I thank the Court.

5    THE COURT:  Mr. Salamon,do you wish to say anything?

6    THE DEFENDANT:  Your Honor, I have no excuse for my

7  criminal conduct.  I have great remorse.  I know a lot of

8  people say they have remorse.  I have tried to show it by

9  actions.  The consequences of me testifying have been

10  horrendous, being called names, being shunned, being thrown out

11  of synagogues, and testify because that was the right thing to

12  do.

13    Your Honor, what I have left is my family.  My love

14  for them is stronger as it's ever been.  They have been with me

15  through chemotherapy, hospitalizations.  I want to be with them

16  and live a simple, law-abiding life.  That is a life I lived

17  for the past four years.  I ask your mercy.  I respect your

18  judgment, Your Honor.

19    THE COURT:  Does the government have anything to add?

20    MS. ECHENBERG:  I will be very brief.

21    We obviously put in our submission the extensive

22  cooperation that Mr. Salamon has given in this case, including

23  helping the government charge 15 additional people, including

24  the leader of the fraud and other lawyers.

25    As your Honor knows, my colleague and I came into this

1  case rather late in the game and met the cooperating witnesses

2  and others shortly before trial.  I will tell you that we met

3  with Mr. Salamon many, many times in advance of trial.  He was

4  always truthful, always patient, especially when he had to

5  repeat things obviously that had been covered with others.

6  It's been addressed by both Mr. Shechtman and Mr. Salamon, but

7  I think the exclusion from the community as a result of his

8  testimony, it's one of the factors to consider with a

9  cooperator.  I think it's been quite detrimental here.  It's

10  not something that, as far as I know, anyone else in the case

11  has experienced.  I think in addition to extensive cooperation,

12  it sets him apart from the other people who have been sentenced

13  thus far in this case.

14      THE COURT:  Mr. Salamon, your lawyer was, of course,

15  correct, that I had read to sentencing materials and gave

16  considerable thought to what was the proper sentence in this

17  case.  The factors that enter into my consideration and

18  decision are, first, your extensive cooperation, which included

19  testifying, and as the government has been speaking, and the

20  community and personal consequences of your cooperation.  I

21  also have considered the length of time that this case has been

22  pending.  I have considered your health.  I've considered all

23  the other family circumstances.

24      Having factored in all of those considerations, I

25  place you on probation for two years, and impose the mandatory

DBKCSALS

1  standard and special conditions that are set out on pages 30

2  and 31 of the presentence report.  There is a mandatory special

3  assessment of 500.  I already signed a preliminary order of

4  forfeiture.

5        I should advise you that you have the right to appeal

6  the sentence I have imposed.

7        Are there any open counts that can be dismissed?

8        MS. ECHENBERG:  Yes, there are underlying indictments

9  we seek to dismiss now.  We are not seeking restitution in this

10  case.

11        THE COURT:  Motion to dismiss the underlying

12  indictments is granted.

13        Is there anything else from the government?

14        MS. ECHENBERG:  No, your Honor.

15        THE COURT:  Anything else from the defense?

16        MR. SHECHTMAN:  Nothing.  We thank the Court.

17        MS. ECHENBERG:  Your Honor, you may have said this,

18  but I imagine that the counts, the sentence is concurrent.

19        THE COURT:  It is running concurrent.

20        MS. ECHENBERG:  Thank you.

21        THE COURT:  Thank you.

22        (Adjourned)

23

24

25